IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-1320-WJM-MEH

LINDA WATTS,

    Plaintiff,

v.

HOME DEPOT U.S.A. INC. d/b/a THE HOME DEPOT

    Defendant.

---

# ORDER DENYING MOTION FOR SUMMARY JUDGMENT

---

This case stems from an injury Plaintiff Linda Watts ("Watts") sustained in the parking lot of Defendant Home Depot U.S.A., Inc.'s ("Home Depot") Store #1538 located at 5660 E. Woodmen Road, Colorado Springs (the "Store"). Watts brings a statutory premises liability claim against Home Depot pursuant to the Colorado Premises Liability Act ("CPLA"), Colo. Rev. Stat. § 13-21-115.[1]

Before the Court is Home Depot's Motion for Summary Judgment ("the Motion"). (ECF No. 59.) For the reasons discussed below, the Court denies the Motion.

## I. BACKGROUND

The basic facts are relatively straightforward and undisputed. Citations to docketed materials are to the page number in the CM/ECF header rather than to any internal pagination.

---

[1] Watts also brought a premises liability claim against Defendant HD Development of Maryland, Inc. ("HD Development"). (ECF No. 32 ¶¶ 114–27.) On August 6, 2018, the Court issued an order granting a stipulated dismissal with prejudice of the claim against HD Development. (ECF No. 60.)

On November 14, 2015, Watts drove to the Store and parked in the Store parking lot, "adjacent to a concrete walkway extending from the . . . Store Entrance into the parking lot." (ECF No. 61 at 4, ¶ 4; ECF No. 62 at 2, ¶ 4.) As Watts returned to her car around 5:30 p.m., she stepped into a "pothole" (as she describes it) in the asphalt immediately adjacent to the concrete walkway, planted her foot, and fell "straight forward." (ECF No. 59 at 3, ¶¶ 8–9; ECF No. 61 at 3–4, ¶¶ 8–9; *id.* at 4, ¶ 7; ECF No. 62 at 2, ¶ 7.)[2] While the parties do not address the nature of Watts's injury or damage in the statements of material facts, Watts's introduction to her response brief states that she "suffered permanent nerve damage in her leg as a result of [a] foot fracture she sustained" in the parking lot. (ECF No. 61 at 1.) The Court will thus presume for purposes of this Motion that Watts suffered an injury as a result of her fall.

Because of the time of day, visibility was limited. Watts could not see the "pothole" where she stepped due to the "late hour, the darkness, and the low lighting in place." (ECF No. 59 at 2, ¶ 2; ECF No. 61 at 2, ¶ 2.) Home Depot says that Watts "stepped into an allegedly pitch black space without looking down and without knowledge as to what was there." (ECF No. 59 at 2, ¶ 7; ECF No. 61 at 3, ¶ 7.) On the evening that Watts fell, Home Depot did not have any warning signs or notices about walking surfaces in the parking lot. (ECF No. 61 at 5, ¶ 13; ECF No. 62 at 3, ¶ 13.)

---

[2] Home Depot states only that "Plaintiff *testified* that . . . [she] fell straight forward," (ECF No. 59 at 3, ¶ 8 (emphasis added)) and admits only that "Plaintiff *testified* that she fell after stepping into a 'pothole'" (ECF No. 62 at 2, ¶ 7 (emphasis added)). Home Depot's statement of facts and response to Watts's statement of material facts demonstrate its reticence to admit that Watts fell in the manner described, but Home Depot does not state a basis for its hesitation nor adduce evidence that Watts did not fall in the manner described. The Court will thus assume for purposes of this Motion that Watts fell in the manner she described in her deposition. (ECF Nos. 59-2 & 61-2.)

The main factual disagreement between the parties is the characterization of the quality of the asphalt adjacent to the walkway. Home Depot describes the "pothole" as a "common, slight and shallow depression in the asphalt surface of the front end of a parking space that corresponds to the location where the front tires of parked vehicles are typically situated." (ECF No. 59 at 2, ¶ 4.) Home Depot submits photographs of the "pothole," which Watts agrees accurately depict the "pothole" as it existed at the time of Watts's fall, with the exception of the orange paint, which was applied after her fall. (ECF No. 59 at 2, ¶¶ 4–6 ; ECF No. 61 at 3, ¶¶4–6; see ECF No. 59-3.) Watts criticizes this definition because Home Depot has presented no record support to show that such a depression is a common condition and because whether a pothole is "slight and shallow" is a matter on which reasonable minds could differ. (ECF No. 61 at 3, ¶ 4.)

Watts characterizes the "pothole" as a "hole . . . approximately 2.5–3 inches deep, and approximately 12" by 12" in surface area, or about the size of a basketball or cantaloupe." (ECF No. 61 at 4, ¶ 8.) Home Depot responds that the "depression is not a hole, was never actually measured by anyone, and the size was purely an estimate provided in response to cross examination." (ECF No. 62 at 3, ¶ 8.) It also emphasizes that Watts's comparison to a basketball or cantaloupe is misleading because the depression was not deep and "[m]ore like an oversized but upside down frisbee." (*Id.* at 2–3, ¶ 4 n. 1.)

The parties agree, however, that the "pothole" was within the boundaries of the Home Depot parking lot where Home Depot expected and intended its customers to park, and adjacent to the sidewalk, where Home Depot expected and intended its customers to walk. (ECF No. 61 at 4, ¶¶ 9–10; ECF No. 62 at 3, ¶¶ 9–10.)

Home Depot managers inspect the Store's outdoor walking surfaces daily to monitor conditions and determine whether repairs or maintenance are needed. (ECF No. 61 at 4, ¶ 11; ECF No. 62 at 3, ¶ 11.) This routine includes inspecting for potholes. (ECF No. 61 at 4, ¶ 11; ECF No. 62 at 3, ¶ 11.) When there is a defect in the parking lot that might "impede the customer service experience," the Store managers can submit a "FixIt" ticket to Home Depot's Building Services at the corporate headquarters. (ECF No. 61 at 4, ¶ 14; ECF No. 62 at 3, ¶ 14; *see* ECF No. 61-5 at 6.)

In May 2014 and July 2015, FixIt tickets were submitted to fix potholes in the parking lot at the Store. (ECF No. 61 at 5, ¶ 15; ECF No. 62 at 4, ¶ 15.) The July 2015 FixIt ticket, submitted two days after a pregnant customer fell after stepping in a pothole in the parking lot, stated that the Store parking lot had "multiple and scattered potholes . . . many . . . big enough and deep enough that they pose serious safety concerns." (ECF No. 61 at 5, ¶¶ 16–17; ECF No. 62 at 4, ¶¶ 16–17.) Home Depot's Rule 30(b)(6) witness was unable to testify whether any work or asphalt repairs occurred in the parking lot as the result of the July 2015 FixIt ticket. (ECF No. 61 at 5, ¶ 18; ECF No. 62 at 4, ¶ 18.) After Watts was injured, Home Depot filled the "pothole" where Watts fell. (ECF No. 62 at 3, ¶ 12.)

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the

relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 248–49; *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find

for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotation marks omitted). A party must support an assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### III.  ARGUMENT

Under the CPLA, an invitee-plaintiff may recover damages on a premises liability claim if the plaintiff can show that the landowner failed to exercise reasonable care to protect the invitee from a danger about which the landlord "actually knew or should have known." Colo. Rev. Stat. § 13-21-115; *Lombard v. Colorado Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo. 2008). Comparative negligence is an affirmative defense to liability. *Union Pac. R.R. Co. v. Martin*, 209 P.3d 185, 190 (Colo. 2009).

Home Depot moves for summary judgment on three grounds: both elements of premises liability, and its affirmative defense of comparative negligence. Specifically, Home Depot argues that (1) it did not unreasonably fail to exercise reasonable care because the "pothole" was not a dangerous condition as a matter of law, and Watts has failed to produce any evidence that the "pothole" posed a danger or that Home Depot failed to exercise reasonable care; (2) Watts has failed to present any evidence that Home Depot knew or should have known about the alleged danger; and (3) Watts's negligence was equal to or greater than any potential negligence by Home Depot. The Court will address each of Home Depot's arguments in turn.

## A. Reasonable Care to Protect Invitee from Danger

"[R]easonable care is measured by what a person of ordinary prudence would or would not do under the same or similar circumstances." *Lombard*, 187 P.3d at 574. "In Colorado, a legal duty exists to use reasonable care 'in response to a foreseeable and unreasonable risk of harm to others.'" *Richardson v. DHS Drilling Co.*, 2015 WL 1378975, at *7 (D. Colo. Mar. 24, 2015) (quoting *United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo.1992)).

### 1. Court Cannot Find, as a Matter of Law, That the Pothole Was Not a Danger on the Evidence Presented

Home Depot summarily argues that the "pothole" did not create an unreasonable risk of harm. (ECF No. 59 at 7.) It supports its argument with photographs of the "pothole" that were taken after the incident and after orange spray paint had been applied. (ECF No. 59-3 at 2, 4.) Home Depot describes those photographs as "clearly show[ing] that this is a common parking space tire depression that corresponds to the location where the front tires of parked vehicles are typically situated." (ECF No. 59 at 7.) In essence, Home Depot asks the Court to review two photographs and determine from them that the "pothole" did not create an unreasonable risk of harm.

Home Depot does not cite any other evidence—not witness testimony or expert reports explaining the photographs, nor any established or recognized standard for paving, maintenance, and repair of parking lots—that would allow the Court to find as a matter of law that a "parking space tire depression" is not a danger. Home Depot instead relies on its own conclusory statements that such a condition is not a danger. The Court cannot and will not make such a determination on the evidence presented,

7

consisting of two, after-the-fact, blurred, and inconclusive photographs.  Such a factual question is properly submitted to the jury.

Home Depot also contends, with no citation to the record or publicly available documents, that "tire depressions of this sort are found in parking lots in cities across the state of Colorado and the United States" and that it "would be highly unlikely for any citizen of the state not to come across a tire depression" when visiting a retail store. (*Id.*)  Home Depot apparently asks this Court to conclude that because such conditions are common, they do not, as a matter of law, create an unreasonable risk of harm, and therefore are not dangerous.

However, as Watts observes in her response brief, the commonness of a danger does not necessarily have any bearing on a landowner's duty to reasonably protect invitees against that danger.  (ECF No. 61 at 9.)  Nor has Home Depot supported with citation to any case law its contention that a common condition does not create an unreasonable risk of harm.  Absent some factual basis or law supporting Home Depot's position, summary judgment is inappropriate.

Finally, Home Depot suggests that Watts's fall is "just as consistent with not knowing or forgetting she had to step down than there being a dangerous condition that caused the alleged fall."  (ECF No. 59 at 7.)  Home Depot appears to argue that, if Watts's injuries did not arise from the "pothole," the condition was not a danger, and therefore Home Depot did not fail to exercise reasonable care.[3]  However, Home Depot presents no evidence to support its alternative theory of injury, while Watts presents

---

[3] While this line of argument raises a causation question, Home Depot raises it in the context of danger and reasonability, and does not pursue a causation argument in its Motion. The Court need not consider issues not raised or briefed by the parties.

evidence to contradict Home Depot's alternative explanation. Specifically, Watts testified that she knew she had to step from the curb onto the asphalt below. (ECF No. 59-2 at 3 ("I knew that I had to step down.").)

Moreover, if nothing else, inclusion of this alternative theory demonstrates the existence of a genuine dispute of material fact: whether Watts's injury can be attributed to the allegedly dangerous condition of the pavement, or something else. Because the Court finds that the evidence presented by Home Depot is not so one-sided as to justify taking the question away from the jury, the Court declines to find that the "pothole" was not a danger as a matter of law. The Court thus denies the Motion with respect to that argument.

2. <u>Watts Has Presented Sufficient Evidence of a Genuine Dispute of Material Fact</u>

Watts has presented sufficient evidence from which a jury could conclude that the "pothole" was a danger and Home Depot unreasonably failed to protect Watts from the risk of harm. The expert report of William Martin ("Martin Report") states that "potholes, changes in elevations, and cracks in the walking surfaces" commonly cause injury to pedestrians in parking lots. (ECF No. 61-3 at 7.)[4] It also explains that "vertical

---

[4] In its reply, Home Depot objects to any reliance on the unsworn Martin Report to oppose summary judgment, citing *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1462–63 (D. Colo. 1997). (ECF No. 62 at 4–5.) The Court has observed that *Sofford* has been abrogated in part by the 2010 amendments to Rule 56. *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1182 n.11 (D. Colo. 2017). Moreover, the Court has repeatedly faced and "routinely rejected this argument in the context of unsworn expert reports submitted as evidence of what an expert would say at trial." *Silverman v. Greenfield*, 2019 WL 409340, at *11 (D. Colo. Jan. 31, 2019); *see also Lyall v. City of Denver*, 2018 WL 1470197, at *5 (D. Colo. Mar. 26, 2018); *Olivero v. Trek Bicycle Corp.*, 291 F. Supp. 3d 1209, 1214–15 (D. Colo. 2017); *Sanchez*, 299 F. Supp. 3d at 1182 n.11; *Pertile v. Gen. Motors, LLC*, 2017 WL 4237870, at *2 & n.3 (D. Colo. Sept. 22, 2017); *Miller v. BNSF Ry. Co.*, 2017 WL 1880603, at *2 (D. Colo. May 9, 2017); *Gunn v. Carter*, 2016 WL 7899902, at *2 (D. Colo. June 13, 2016). The Court's view is dually informed by the "utterly formalistic" nature of the objection, *Sanchez*, 299 F. Supp. 3d at 1182

edges greater than 1/4" high are abrupt changes in level that are hazardous to pedestrians" and that, in this case, the "joint between concrete and asphalt resulted in a dangerous abrupt vertical edge." (*Id.*)  The Martin Report concludes that "Home Depot should have identified the hole as a dangerous condition and repaired it as part of routine parking lot maintenance." (*Id.* at 8.)  Finally, it is undisputed that there was no warning or indication that the "pothole" existed.  (ECF No. 61 at 5, ¶ 13; ECF No. 62 at 3, ¶ 13.)

These facts, taken together, provide a sufficient basis from which a reasonable jury could find that the "pothole" was a danger, and Home Depot acted unreasonably in failing to repair it or warn customers.  The Court thus also denies the Motion on the issue of reasonable care and whether the "pothole" was a danger.

**B.      Home Depot's Knowledge of "Pothole"**

To hold Home Depot liable under the CPLA, Watts must show that Home Depot "actually knew or should have known" of the potential danger to invitees.  Colo. Rev. Stat. § 13-21-115(3)(c).  This standard may be satisfied by actual or constructive knowledge.  *Lombard*, 187 P.3d at 568; *see Clemmons v. FC Stapleton II, LLC*, 485 F. App'x 904, 908 (10th Cir. 2012).  Constructive knowledge is "knowledge that one exercising reasonable diligence should have."  *Clemmons*, 485 F. App'x at 908.

"[A] dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the

---

n.11, and the fact that "the procedure surrounding expert reports provides safeguards and indicia of reliability similar to those provided by sworn affidavits or declarations," *Gunn*, 2016 WL 7899902, at *2.  Accordingly, the Court overrules Home Depot's objection to Martin's report.

10

exercise of reasonable care, such condition and its dangerous character should have been discovered." *Id.* (quoting *Lombard*, 187 P.3d at 571). For example, in a factual scenario similar to the one at bar, the Tenth Circuit found that "a reasonable jury could infer from the evidence that the uneven sidewalk that allegedly caused [the plaintiff's] injuries had existed for such a period of time that [the defendant] should reasonably have become aware of it before the accident." *Id.* at 909.

Home Depot first argues that Watts presents no evidence that the "pothole" was of such a nature that its allegedly dangerous character should have been discovered. (ECF No. 59 at 10.) This contention essentially rehashes its prior argument that the "pothole" was not a danger. The Court has determined that there is a genuine issue of material fact as to the condition of the "pothole." Moreover, Watts presents evidence that the "pothole" was apparent from looking at it, Home Depot regularly monitored to the lot for defects, and Store employees submitted FixIt tickets to Home Depot headquarters for upkeep of the parking lot. (ECF No. 61 at 4, ¶¶ 11, 14; ECF No. 62 at 3, ¶¶ 11, 14.) Taking the facts in the light most favorable to the nonmoving party, and assuming for purposes of this analysis that the pothole was a danger, Watts has presented sufficient evidence to allow a reasonable jury to find that the "pothole" was of such a nature that Home Depot should have discovered it.

Home Depot next contends that Watts has failed to show that Home Depot knew or should have known that the specific "pothole" at issue, rather than potholes generally in the Store parking lot, posed a danger. (ECF No. 59 at 11–12.) In response, Watts claims that she has demonstrated Home Depot's actual knowledge of the long-term, poor condition of the parking lot that the Store manager considered a safety risk in part

11

due to other customers falling. (ECF NO. 61 at 14.) Watts also contends that she "has no burden to demonstrate [that] Home Depot had actual knowledge of the specific pothole." (*Id.* at 14.)

While Watts is incorrect as to the nature of her burden, she nevertheless satisfies her burden as set forth in *Clemmons*. In that case, the Tenth Circuit relied on the testimony of multiple witnesses that the sidewalk deformity at issue had developed over a period of months, and thus concluded that reasonable jury could infer that the deformity had not developed suddenly or before the defendant had an opportunity to become aware of it. 485 F. App'x at 908. Thus, specific knowledge of the danger, rather than generalized knowledge that poor conditions otherwise exist, is required for Watts to prevail on her CPLA claim.

Watts has presented sufficient evidence of a genuine dispute of material fact as to Home Depot's actual or constructive knowledge of the "pothole." Watts cites to Home Depot's initial summary judgment motion[5] which states that the "pothole" was "merely a slight and shallow depression in the concrete surface of the front end of a parking space created by the weight of front tire of numerous cars parking in the parking space *over a period of time*." (ECF No. 50 at 2 (emphasis added).) Notably, when Home Depot submitted its revised Motion—after the benefit of seeing Watts's response to its initial, non-compliant motion—it changed the language and characterized the "pothole" as a "common, slight and shallow depression in the asphalt surface of the front end of a parking space that corresponds to the location where the

---

[5] Home Depot's Motion is technically a revised motion for summary judgment. The Court struck Home Depot's initial motion for summary judgment (ECF No. 50) for failure to comply with the undersigned's practice standards.

front tires of parked vehicle are typically situated." (ECF No. 59 at 2, ¶ 4.) Broadly interpreted, the phrase "typically situated," could imply that the condition is one which develops over time.

In addition, the Martin Report contains multiple statements that the "pothole" had existed in the Store parking lot for at least a year prior to Watts's injury. (ECF No. 61-3 at 4, 5, 8, 10.) Moreover, the record shows that Home Depot regularly inspected the parking lot for whether repairs or maintenance were needed. Thus, taking all inferences in the light most favorable to the nonmoving party, Home Depot had the opportunity to discovery the allegedly dangerous "pothole" as it developed over a period of time. *See Adler*, 144 F.3d at 670. Watts has presented evidence that Home Depot had actual or constructive knowledge of the particular "pothole" in question here, and, as a consequence, the Court denies Home Depot's Motion on this element of the claim.

## C. Comparative Negligence

Colorado's comparative negligence statute requires the trier of fact to determine the amount of negligence, if any, attributable to the plaintiff, and the overall damages award must be reduced by that percentage. Colo. Rev. Stat. § 13-21-111. However, if a plaintiff's negligence is equal to or greater than the negligence of the defendant, the plaintiff cannot recover damages. *Id.* "The relative degrees of fault are to be determined by a trier of fact except in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference." *See Gordon v. Benson*, 925 P.2d 775, 780 (Colo. 1996).

Comparative negligence is an affirmative defense. *See Union Pac. R.R. Co.*, 209 P.3d at 190. Home Depot thus bears the burden to demonstrate that there is no genuine dispute of material fact or that the evidence is so one-sided that the Court need not submit the question of comparative negligence to a jury. *Anderson*, 477 U.S. at 248–49; *see P.W. v. Children's Hosp. Colorado*, 364 P.3d 891, 896 (Colo. 2016) (granting summary judgment on a comparative negligence defense where one party could not have been negligent as a matter of law).

Home Depot argues that Watts's negligence was greater than that of Home Depot's, thus barring Watts from recovering any amount. Specifically, Home Depot argues that Watts was negligent in failing to look before she stepped off the sidewalk onto the asphalt in the dark parking lot. (ECF No. 59 at 8–9.) Home Depot emphasizes that taking a "step without being able to see, or knowing what she would be stepping into, unequivocally constitutes negligence." (*Id.* at 9.)

Home Depot has not shown that it is entitled to summary judgment on its affirmative defense. Even taking as true for purposes of this Motion that Watts was in some way contributorily negligent, Home Depot has not cited any evidence as to the *relative* culpability of the parties, much less any evidence that demonstrates Watts was equally or more negligent than Home Depot. Absent some justification to apportion the majority of the negligence to Watts, and thus deny her any recovery, the Court finds that Home Depot has not carried its burden on summary judgment. *See Anderson*, 477 U.S. at 248–49.

Moreover, this is not one of the "clearest of cases": the facts are disputed and reasonable minds could draw more than one inference as to the parties' relative negligence. *See Gordon*, 925 P.2d at 780; *P.W.*, 364 P.3d at 896. Consistent with Colorado law, the trier of fact must determine the relative culpability of the parties for damages sustained by Watts. *See* Colo. Rev. Stat. § 13-21-111(2). Home Depot's Motion for summary disposition of its comparative negligence affirmative defense is also denied.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant Home Depot's Motion for Summary Judgment (ECF No. 59) is DENIED;

2. This case remains set for a Final Pretrial Conference before U.S. Magistrate Judge Michael E. Hegarty on **June 17, 2019 at 10:15 a.m.** in Courtroom A501.

Dated this 7th day of March, 2019.

BY THE COURT:

William J. Martinez
United States District Judge